NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KALEEM MUHAMMAD,<br><br>Plaintiff,<br><br>v.<br><br>SMART/UNITED TRANSPORTATION UNION LOCAL 759, *et al.*,<br><br>Defendants. | Civil Action No.: 16-8344 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Erika A. Diehl-Gibbons, International Association of Sheet Metal, Air, Rail and Transportation Workers Smart-Transportation Division ("International"), John Previsich, Smart/United Transportation Union Local 759 ("Local 759"), and Calvin Studivant's (collectively referred to as "Union Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36). Plaintiff has submitted Opposition to said Motion (ECF No. 39), to which Union Defendants have replied. (ECF No. 40). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants the Motion to Dismiss.

# I. BACKGROUND[1]

## A. The Parties

Plaintiff, who is a New Jersey resident, brings this action against his union, Defendant Local 759, as well as Defendant International. (*See generally* Plaintiff's Second Amended Complaint, ECF No. 33 ("SAC") ¶¶ 8-9). Defendant John Previsich is the President of Defendant International, and Defendant Studivant is the Vice President of the Bus Department of Defendant Local 759. (SAC ¶¶ 10-11). Finally, Defendant Diehl-Gibbons is the Associate General Counsel of Defendant International. (SAC ¶ 12).

## B. Pertinent Facts

Plaintiff was employed by Community Coach, Inc. ("Community") for 18 years and has 25 years of bus driver experience. (SAC ¶ 13). On July 18, 2015, Plaintiff was driving a bus from North Carolina to New Jersey. (SAC ¶ 14). While driving through Maryland, he was pulled over for failing to stop at a weigh station. (Id.). Plaintiff was cited for that violation as well as driving while fatigued. (Id.). The summons for driving while fatigued was dismissed, and the weigh station violation resulted in a fine. (Id.). Plaintiff presented the summonses to his employer, as was required by "Part I Attachment, Section 11, Article 1 of the Collective Bargaining Agreement" ("CBA"). (SAC ¶ 15).

On August 13, 2015, Plaintiff appeared for a disciplinary hearing where Defendant Studivant, as well as Stanley Fairconnetue, who is a hearing officer and assistant manager with Community, attended. (SAC ¶ 16). The purpose of the hearing was to determine the ultimate discipline Plaintiff should receive for his traffic violations, with termination of employment possible. (Id.). Stanley Fairconnetue determined that the appropriate discipline for Plaintiff was

---

[1] This background is derived from Plaintiff's Second Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

to complete one hour of computer based training. (SAC ¶ 18). Union Defendants objected to the discipline claiming that Community did not comply with Article 24 of the CBA. (SAC ¶ 19). On or about August 18, 2015, Community's manager Newel Scoon and Defendant Studivant engaged in a conversation regarding whether Plaintiff would be required to perform the training. (SAC ¶ 20). Union Defendants took the position that Community failed to meet the time limits for such a hearing under the CBA. (Id.). According to Plaintiff, Union Defendants never consulted with him regarding the discipline decision. (SAC ¶ 61).

Thereafter, Plaintiff was terminated by way of a "Hearing Decision letter" on August 20, 2015, which was five business days after the completion of the hearing, despite the fact that the CBA required said letter to be issued within two business days after the completion of the hearing. (SAC ¶¶ 21-23). The "hearing was held prior to the determination of the District Court of Maryland for Cecil County ... as to the guilt or innocence of Plaintiff regarding the two citations he received." (SAC ¶ 25). This fact, Plaintiff avers, was "in violation of the CBA" because Plaintiff's employer did not have all the necessary information to ascertain whether termination was appropriate. (SAC ¶¶ 26-27).

Plaintiff appealed the termination, through Union Defendants, on August 21, 2015. (SAC ¶ 28). On September 3, 2015, Community's General Counsel Jazmine Estacio heard the appeal. (SAC ¶ 29). Plaintiff claims that the citations were minor infractions, and the citation for driving while fatigued was based on his own statement to the police officers and not any observations by the police. (SAC ¶¶ 30-32). On September 13, 2015, Community provided Newel Scoon and Defendant Studivant with a draft letter of reinstatement, which converted Plaintiff's termination to a suspension and final warning. (SAC ¶ 34). It further noted that Plaintiff would receive back pay if the pending motor vehicle charges against him were dismissed, and also required him to

complete the aforementioned computer training. (SAC ¶ 35). In exchange, Plaintiff had to agree that if he violated any company policies for one year he would be immediately terminated. (SAC ¶ 36). Union Defendants and Plaintiff felt that the agreement was a violation of Plaintiff's due process rights and, accordingly, never signed it. (SAC ¶ 37).

Plaintiff, through Union Defendants, requested that this issue be arbitrated. (SAC ¶ 39). Prior to arbitration, Plaintiff requested that Union Defendants provide him with an attorney experienced in union grievances. (SAC ¶ 40). Defendant Studivant told Plaintiff "that he 'didn't think it was a big deal' and he 'would handle it himself.'" (Id.). The matter proceeded to arbitration on November 17, 2015, where Defendant Studivant, rather than counsel, represented Plaintiff. (SAC ¶ 41). Plaintiff generally claims Defendant Studivant failed to properly represent him, but does not provide any additional allegations to support this contention. (SAC ¶ 42). On January 11, 2016, Plaintiff received the arbitration opinion which found that he was discharged for just cause and denied his grievance. (Id.).

Thereafter, Defendant Studivant advised Plaintiff that Union Defendants had already filed an appeal of the arbitration award with the New Jersey Superior Court, Appellate Division. (SAC ¶ 43). When Plaintiff requested a copy of the appeal, Defendant Studivant advised Plaintiff that the Cleveland office of the Union Defendants was supposed to file it but never did, and that Defendant Studivant was aware that the appeal had not been filed when he told Plaintiff that the appeal was going to be filed. (SAC ¶¶ 45-46) Defendant Studivant then told Plaintiff he would have to handle the appeal *pro se* if he wanted to pursue same. (SAC ¶ 47).

Union Defendants provided Plaintiff with a letter dated March 3, 2016 in response to Defendant Studivant's request to Union Defendants to review Plaintiff's case to see if there was a basis to set the arbitration award aside. (SAC ¶ 46). Plaintiff then wrote to Defendant Previsich

regarding Union Defendants' assistance in appealing the award. (SAC ¶ 47). Thereafter, Union Defendants gave Plaintiff $250.00 to cover the cost of the appeal. (SAC ¶¶ 48-49). On March 30, 2016, Plaintiff attempted to file an appeal, but it was rejected as untimely. (SAC ¶ 50). Thereafter, Defendant Previsich advised Plaintiff that Union Defendants would no longer provide assistance. (SAC ¶ 51).

### C. Procedural History

On August 2, 2016, Plaintiff instituted this action in the Superior Court of New Jersey, Law Division, Union County. (ECF No. 1). Plaintiff's original complaint was against Union Defendants, Community, Estacio, Fairconnetue, Scoon, and Stagecoach Group, P.L.C. (Id.). Additionally, Plaintiff's original Complaint contained eight causes of action: Union Bad Faith Toward Member[2] (Count I); Employer's Bad Faith Against Employee (Count II); Employer Breach of Employee Manual (Count III); Wrongful Termination in Violation of Company Policy (Count IV); Wrongful Discharge in Violation of Public Policy Doctrine (Count V); Employer Retaliation Against Employee (Count VI); Fraud and Misrepresentation (Count VII); and Intentional Infliction of Emotional Distress (Count VIII). (Plaintiff's Complaint, ECF No. 1 ¶¶ 47-100).

On November 4, 2016, Defendants removed the matter to this Court. (ECF No. 1-1). Thereafter, both sets of Defendants submitted Motions to Dismiss (ECF Nos. 5, 10), and this Court granted both (ECF No. 17). Specifically, this Court dismissed Counts II-VI and Count VIII with prejudice with respect to all Defendants as time barred. (Id. at 13). This Court also dismissed Counts I and VII, which were only against Union Defendants, without prejudice for failure to state a claim upon which relief can be granted. (Id.). As for Count I, Plaintiff failed to properly plead

---

[2] The Court construed this claim to be one for the Breach of the Duty of Fair Representation. (ECF No. 17).

5

plausible factual allegations that Union Defendants' conduct was arbitrary, discriminatory, or in bad faith as required to constitute a claim for breach of the duty of fair representation. (Id. at 11). Finally, as for Count VII, Plaintiff failed to meet the heightened pleading standard that Federal Rule of Civil Procedure 9(b) requires for claims sounding in fraud. (Id. at 12).

Plaintiff then filed an Amended Complaint alleging, again, Counts I and VII and added a third count for negligence. (ECF No. 19 ¶¶ 47-85). On April 28, 2017, the parties had an in person conference before the Honorable Joseph A. Dickson, U.S.M.J., to discuss the Amended Complaint. (ECF No. 22). There, "Coach Defendants argued that Plaintiff's claims for negligence are substantially deficient as the claims are barred by the exclusivity provision of the Workers Compensation Act[.]" (ECF No. 23 at 3). Judge Dickson permitted Plaintiff to file another Amended Complaint (id.), which Plaintiff filed on May 22, 2017. (ECF No. 24). There, Plaintiff alleged two causes of action: Union Bad Faith Toward Member (Count I); and Fraud and Misrepresentation (Count II). (Id. ¶¶ 47-76).

On June 19, 2017, Union Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 26). The matter was fully briefed on July 18, 2017. (ECF Nos. 29-30). On July 27, 2017, this Court granted Union Defendants' Motion to Dismiss and dismissed Plaintiff's Amended Complaint without prejudice, with leave to file a Second Amended Complaint. (ECF Nos. 31-32). Plaintiff filed his SAC on August 25, 2017. (ECF No. 33). Therein, Plaintiff once again asserts two causes of action: Union Bad Faith Toward Member (Count I);[3] and Fraud and Misrepresentation (Count II). (Id. ¶¶ 53-93).

---

[3] The Court again construes this claim to be for the Breach of the Duty of Fair Representation.

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

### A. Breach of the Duty of Fair Representation

A union's breach of the duty of fair representation is a hybrid two-part claim: an employer's breach of the CBA and a union's breach of its duty of fair representation. *See DelCostello v.*

7

*Flowers*, 462 U.S. 151, 164 (1983). Therefore, when alleging breach of the duty of fair representation against a union, a plaintiff must plead "that the employer's action violated the terms of the [CBA] and that the union breached its duty of fair representation." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). A plaintiff may choose to sue the union or the employer, "but the case he must prove is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 165.

"Because a union is authorized to act as the exclusive bargaining agent for its members, it has a duty to provide fair representation in the negotiation, administration, and enforcement of the [CBA]." *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir. 1981). A union does not breach this duty simply by refusing to arbitrate a claim, even if that claim was meritorious. *Id.* at 958 (citing *Vaca v. Sipes*, 386 U.S. 171, 192-93 (1967)). Likewise, "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970). Rather, "[p]roof of arbitrary or bad faith union conduct in deciding not to proceed with the grievance is necessary to establish" such a breach. *Findley*, 639 F.2d at 957 (citing *Vaca*, 386 U.S. at 194-95). To survive a motion to dismiss "a [duty of fair representation] claim must allege arbitrary, discriminatory or bad faith conduct, and those conclusions must be supported by plausible allegations of fact." *Vega v. Teamsters Local Union No. 102*, 2014 WL 3894272, * 2 (D.N.J. Aug. 7, 2014) (citing *Masy v. N.J. Transit. Rail. Op., Inc.*, 709 F.2d 322, 328 (3d Cir. 1986)).

Preliminarily, the Court rejects Union Defendants' argument that Plaintiff's duty of fair representation is time barred. (ECF 36-1 ("Def. Mov. Br.") at 9-10). While Union Defendants are correct that the statute of limitations for hybrid duty of fair representation/breach of contract claim is six months, the Third Circuit has made it clear that the claim accrues when a plaintiff learns that

further union action or involvement would be futile. *See Childs v. Penn. Fed'n Bhd. of Maint. Way Employees*, 831 F.2d 429, 435-36 (3d Cir. 1987). There, the Court found that it would be unreasonable for a plaintiff to be required to file his or her duty of fair representation claim when the union "proferred rays of hope" that the arbitration decision could be altered. *Childs*, 831 F.2d at 436. The same can be said for Plaintiff herein. While it is true that the arbitration decision was rendered in January of 2016, Union Defendants continued to give Plaintiff hope that an appeal could be taken and the award could be modified or set aside. (SAC ¶¶ 42-46). It was not until March 3, 2016, that Plaintiff was notified that Union Defendants would take no further action. (SAC ¶ 46). Accordingly, consistent with *Childs*, *supra*, Plaintiff's duty of fair representation claim accrued on March 3, 3016. Plaintiff filed his initial complaint in the Superior Court of New Jersey on August 2, 2016, well within the six-month period. Hence, Plaintiff's duty of representation claim was brought in a timely fashion.

The Court also rejects Union Defendants' *res judicata* argument. (Def. Mov. Br. at 11-13). Union Defendants correctly cite to the *res judicata* standard which bars claims that were previously litigated when three elements are met: "(1) a final judgment on the merits; (2) a prior suit involving the same parties or their privies; and (3) a subsequent suit based on the *same cause of action*." (Def. Mov. Br. at 12) (quoting *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1086 (3d Cir. 1988)) (emphasis added). However, there is a fatal flaw that Union Defendants have overlooked in asserting this defense. Indeed, a final judgment was rendered when the adverse arbitration award was issued *in connection with Plaintiff's purportedly improper termination of employment*. This case, however, is not about the termination nor does it involve the same parties. Rather, this case was brought by Plaintiff against Union Defendants, for allegedly breaching their duty of fair representation during that prior litigation. Hence, the matter *sub judice*

does not consist of the same cause of action nor does it involve the same parties. Accordingly, the Court rejects Union Defendants' *res judicata* argument.

Next, Union Defendants argue that Plaintiff's case must be dismissed because all claims against his former employer have been dismissed. (Def. Mov. Br. at 13). The Court disagrees. As explained above, to succeed on a breach of the duty of fair representation claim, a plaintiff must prove that his or her union breached the duty, and that his or her employer violated the relevant collective bargaining agreement. *See Chauffeurs*, 494 U.S. at 564. Moreover, as explained, a plaintiff can choose to sue the employer, the union or both. *See DelCostello*, 462 U.S. at 165. Thus, following this logic, it is apparent that Plaintiff's employer need not participate in the action for his claim to succeed. Plaintiff merely needs to show that his former employer violated the CBA, not that it is liable for damages to him. Therefore, the Court disagrees with Union Defendants' argument.

Finally, the Court finds that Plaintiff has failed to plead a *prima facie* cause of action for breach of the duty of fair representation against Union Defendants. Plaintiff's SAC once again sounds in negligence. Plaintiff alleges that Union Defendants "breached the relevant duty of care by [their] arbitrary, discriminatory, and bad faith conduct." (SAC ¶ 72). Specifically, that conduct includes having Defendant Studivant represent him at the hearing, failing to provide Plaintiff with an attorney, and having a person who was not previously involved in the disciplinary situation handle the hearing. (SAC ¶¶ 61-63, 67-74). However, these allegations are exactly the type of allegations the Court found insufficient before. (ECF No. 17 at 10-11). Indeed, Plaintiff's SAC has reverted to claims that sound in negligence which are insufficient to support a claim for breach of the duty of fair representation. Therefore, Plaintiff's SAC, in its current form, cannot proceed. As such, Plaintiff fails to state a claim upon which relief can be granted. Therefore, the Court

grants Union Defendants' Motion to Dismiss Plaintiff's Count I without prejudice. Plaintiff shall have a final opportunity to amend his deficient pleading.

### B. Fraud and Misrepresentation

Claims sounding in fraud must be pled under the heightened standards of Federal Rule of Civil Procedure 9(b). *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984). The Third Circuit has set forth the following requirements for pleading fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004). With this in mind, the Court turns to New Jersey law. In order to plead a fraud based claim in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. Sup. Ct. 1997).

The Court finds that Plaintiff has, once again, failed to meet the heightened pleading standard for fraud based claims. For a third time, Plaintiff asserts that Union Defendants committed fraud in two ways: 1) convincing Plaintiff that they were providing appropriate legal services; and 2) informing Plaintiff that they filed an arbitration appeal. (SAC ¶¶ 79-81, 85-87).

Specifically, Plaintiff alleges that Union Defendants knew that Defendant Studivant could not properly handle the arbitration proceeding, but told Plaintiff otherwise. (SAC ¶ 79). Plaintiff backs this assertion with an allegation that Union Defendants often employ attorneys for arbitration

11

proceedings and therefore knew that Defendant Studivant could not handle such matters. (SAC ¶ 80). Plaintiff further asserts that this misrepresentation was material because Defendant Studivant "failed to present critical facts" at the arbitration proceeding. (SAC ¶ 81). However, nowhere within the SAC does Plaintiff actually explain what the misrepresentations are. Plaintiff does not explain how Defendant Studivant was ill equipped to handle the arbitration. Simply losing a proceeding does not necessary mean that a person was incapable of doing so. Also, Plaintiff does not explain what "critical facts" were allegedly omitted by Defendant Studivant during the hearing. Plaintiff's SAC suffers from the same infirmities his prior Complaints suffered from. Indeed, Plaintiff uses the proper legal terminology in a technical sense, but fails to actually provide a sufficient and substantive factual basis for his assertions.

In addition, Plaintiff again claims that Defendant Studivant misrepresented to Plaintiff that Union Defendants had filed an appeal. (SAC ¶ 85). Plaintiff, once again, alleges that Union Defendants, including Defendant Studivant, knew that they had not filed an appeal. (SAC ¶ 87). However, Plaintiff's SAC contains conflicting statements, because in that very same paragraph Plaintiff claims Defendant Studivant wrote to the Union Defendants "to request a review and determine if there was any basis to set aside the award." (Id.). Thus, the SAC itself indicates that Defendant Studivant was uninformed as to the status of the appeal. Hence, Plaintiff's claim for fraud and misrepresentation is inadequate and is hereby dismissed. Given that Plaintiff has unsuccessfully attempted to plead this claim three times, it is obvious to the Court that further amendment will be futile and the dismissal of the claim is with prejudice.

## CONCLUSION

For the aforementioned reasons, Union Defendants' Motion to Dismiss is granted. An appropriate Order accompanies this Opinion.

DATED: December 5th, 2017

JOSE L. LINARES
Chief Judge, United States District Court